IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RALPH OLIVER, | ) |
|       Petitioner, | ) ) ) |
| v. | ) ) Case No. CIV-24-1310-SLP |
| WILLIAM CHRISTOPHER RANKINS, | ) ) ) |
|       Respondent. | ) ) |

**O R D E R**

Petitioner, a state prisoner appearing pro se, has filed a Petition [Doc. No. 1] pursuant to 28 U.S.C. § 2241, and challenges the execution of his state sentence in Case No. CF-2001-1429, District Court of Tulsa County, State of Oklahoma. Before the Court is the Report and Recommendation [Doc. No. 21] (R&R) of United States Magistrate Judge Chris M. Stephens upon referral of this matter pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The Magistrate Judge recommends denying the Petition on the merits.

Petitioner timely objected to the Report and Recommendation [Doc. No. 28]. The Court reviews de novo any portion of the Report and Recommendation to which Petitioner has made specific objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

**I.   Background**

Petitioner's state convictions are based on conduct spanning May 1999 through February 2001.[1] He is serving three consecutive 15-year sentences.

---

[1] The Information charged Petitioner in Count 1 with criminal acts between May 1, 1999 through February 5, 2001 and in Counts 2 and 3 with criminal acts between May 1, 1999 and February 27,

Petitioner's claims in this action arise from Oklahoma's 85 percent law, as set forth in Okla. Stat. tit. 21, §§ 12.1 and 13.1, which generally requires persons convicted of certain enumerated offenses to serve 85% of their term of incarceration prior to being eligible for parole consideration and also prevents them from being eligible for earned credits that would reduce the length of their sentence.[2]  The 85 percent law became effective July 1, 1999 and applies to offenses committed on or after March 1, 2000.

The Oklahoma Department of Corrections (ODOC), responsible for the administration of Petitioner's sentences, originally did not treat those sentences as governed by the 85 percent law.  But a "time calculation audit" in October 2012 resulted in the removal of 2,710 days of earned credits and Petitioner was advised that that his crimes "fall under the 85% rule."  *See* Doc. No. 1-1 at 10.

Petitioner sought administrative relief through the prison grievance system, but relief was denied.  The ODOC advised Petitioner that he had exhausted administrative remedies as of April 18, 2016.  *See id*. at 1.

In this action, Petitioner claims that he is not subject to the 85 percent law because his crimes were committed prior to March 1, 2000.  He relies on the state court docket sheet which shows the date of his alleged crimes as May 1, 1999.  *See id*. at 7.  He states that the ODOC "is going off the Information, but the docket sheet is the official entry."  Pet. at 4.

---

2001, respectively.  *See* Doc. No. 9-3 at 1.  The Judgment entered March 8, 2002, does not include the date of the offenses.  *See* Doc. No. 9-2.

[2] There is no dispute that Petitioner's crimes of conviction – sexual battery of a child – are enumerated offenses.

He further claims that ODOC took away his earned credits without due process. According to Petitioner, even if the ODOC "uses [the] date on [the] Information, some of his crimes occurred prior to the "85% date" and some were after and a jury, not the ODOC, should determine the date of the offense." *Id*.

Petitioner raises four grounds for relief: (1) because his crimes were committed prior to March 1, 2000, he is not subject to the 85 percent law; (2) the ODOC removed earned credits after he had discharged the sentence on Count 1 and "rebilled the same sentence at 85 %" in violation of his due process rights; (3) the ODOC has no authority to change his sentence – ODOC "cannot use the Information or latest date" but must "go by the docket sheet and date of alleged offense"; and (4) the ODOC violated *Teague v. Lane*, 489 U.S. 288 (1989) because "new rules of criminal procedure will not be applicable to cases which have become final." *See* Pet. at 4-5.

Petitioner has raised similar claims multiple times in various proceedings in the state courts and those claims have been rejected. In 2020, Petitioner filed an action in state court, which was removed to federal court, alleging that the ODOC and certain ODOC employees had "erroneously applied the eighty-five percent rule to his sentence and revoked his earned time credits." *See Oliver v. Okla. Dep't. of Corrs*., No. CIV-20-1018-G, 2021 WL 4442936 at *1 (W.D. Okla. Sept. 28, 2001). The federal court determined that Petitioner had "expressly framed his claims under Oklahoma law" and that there was no basis upon which to exercise subject matter jurisdiction. *Id*. at 2 (citing Okla. Stat. tit. 12, §§ 1331 and 1451). The court remanded the action to state court.

On remand, the state district court found that, pursuant to ODOC policy, Petitioner's sentences were subject to the 85 percent law. *See Oliver v. Okla. Dep't. of Corrs.*, Case No. WH-2020-2, District Court of Beckham County, State of Oklahoma, Order dated April 29, 2022.[3] The state district court further found that the ODOC audit was an administrative procedure within ODOC's authority and did not violate Petitioner's due process rights.[4]

A review of the state court dockets demonstrates that in 2019 Petitioner also challenged ODOC's application of the 85 percent law to his sentences. Petitioner sought a writ of mandamus. *See Oliver v. Okla. Dep't of Corrs.*, Case No. CV-2019-1013, District Court of Oklahoma County, State of Oklahoma. The state district court denied the petition and found that mandamus relief was improper. The Oklahoma Court of Criminal Appeals (OCCA) affirmed the denial. *See Oliver v. Okla. Dep't of Corrs.*, Case No. MA-2019-898, Okla. Ct. Crim. App., Order dated December 18, 2019. The OCCA affirmed the district court's findings that "to the extent Petitioner sought the amendment of sentencing documents issued by the district court of Tulsa County, his remedy was to seek post-conviction relief in that court" and that "the appropriate vehicle to evaluate the administration of the sentences (as opposed to the lawfulness of the convictions or

---

[3] The Court takes judicial notice of the state court docket, available at www.oscn.net/dockets.

[4] The state district court relied, in part, on ODOC's Sentence Administration Policy OP-060211 which provides:

> For crimes that were committed during a period of time lasting longer than one day, a new or amended law should be applied to the sentence if the effective date of the law / amendment occurred prior to the last date of the commission of the crime.

*See id*.

sentences) was to file a petition for writ of habeas corpus in the district court where he is incarcerated." *Id*. at 2.

Based on this litigation history, it appears that Petitioner's last filing, prior to commencing this action, occurred in approximately 2022 – at least two and one-half years prior to the filing of the instant action in December, 2024.

## II.   The Magistrate Judge's Findings

The Magistrate Judge denied Petitioner's claims on the merits. In doing so, the Magistrate Judge declined to address Respondent's Motion to Dismiss [Doc. No. 9], challenging Petitioner's claims as untimely under the applicable one-year limitations period. *See* 28 U.S.C. § 2244(d)(1); *Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006). The Magistrate Judge noted Petitioner's argument that the statute of limitations could be tolled under the continuing violation doctrine and that the Tenth Circuit has not yet addressed whether the doctrine applies to toll untimely habeas filings. *See* R&R at 7, n. 1 (citing *Griffith v. Bryant*, 625 F. App'x 914, 917 (10th Cir. 2015)).

As to the merits, the Magistrate Judge determined that "Oklahoma's parole scheme is discretionary, and Petitioner has no constitutionally protected liberty interest in parole." R&R at 5. Additionally, the Magistrate Judge determined that "ODOC did not unconstitutionally deny [Petitioner] any earned credits" because the 85 percent law "does not extend the duration of incarceration beyond the term of years initially imposed." *Id*. Instead, "[i]t merely postpones the date on which an inmate is initially eligible to be considered for parole." *Id*. Accordingly, the Magistrate Judge recommended the Petition be denied.

### III. Petitioner's Objection

In his Objection, Petitioner attempts to "clarify" his claims. He states that the ODOC "removed the jury's determination of what the punishment should be" and effectively unlawfully amended his sentences when it "took it upon themselves [sic] to change the way that Petitioner's sentence was to be administered." Obj. at 5. He claims such conduct "bypassed 'notice' to the Petitioner and any form of hearing where Petitioner could defend or object to what was being done to his person and his liberty interest." *Id*. Petitioner leaves unaddressed the Magistrate Judge's findings that he has no constitutionally protected liberty interest in parole.

### IV. Discussion

To the extent Petitioner attempts to raise a new claim in his Objection, the Court rejects the same.[5] And the Court generally concurs with the Magistrate Judge's finding that Petitioner has no constitutionally protected liberty interest in parole – a finding unchallenged by Petitioner.

But the crux of Petitioner's claims are based on the ODOC's alleged improper removal of earned credits during his sentencing audit. The Court finds those claims are clearly time-barred and neither statutory or equitable tolling renders the claims timely filed.

---

[5] And to the extent that new claim challenges his conviction or sentence, he cannot bring such a claim in this § 2241 action. Instead, as he has been instructed on prior occasions, he must seek relief pursuant to 28 U.S.C. § 2254. *See, e.g., Davison v. Harpe*, No. 24-5104, 2025 WL 1233450 at *2 (10th Cir. Apr. 29, 2025) (challenge to application of 85 percent law to petitioner's sentence based on trial court's alleged error in including the date of the offense in the amended judgment, did not challenge the execution of the sentence, but the judgment itself and would have to be raised in a § 2254 petition).

As the Magistrate Judge acknowledged, the Tenth Circuit addressed substantially similar claims in *Griffith,* an unpublished decision, and deemed the claims untimely. *See Griffith*, 625 F. App'x at 916. Although the Tenth Circuit noted the continuing violation doctrine, the court did not deem Petitioner's claims timely pursuant to that doctrine and acknowledged that no Tenth Circuit precedent recognizes application of that doctrine to habeas claims.[6]

Here, Petitioner's claims are untimely. The ODOC advised Petitioner that he completed exhaustion of administrative remedies in 2016 – nearly ten years ago. He has since that time brought various proceedings, as detailed above, all to no avail. His last action ended in 2022 and he has not explained the reason for his lack of diligence in pursuing relief in the interim. Nothing in the record, therefore, supports statutory or equitable tolling. And the Court declines to apply the continuing violation doctrine where no Tenth Circuit precedent has deemed the doctrine applicable to toll untimely habeas filings.[7]

Moreover, the state courts have addressed and acknowledged, as a matter of state law, the authority of ODOC to remove the credits and deem Petitioner's sentences subject

---

[6] Instead, in the context of denying the petitioner a certificate of appealability, the Court noted that reasonable jurists might debate the district court's rejection of the continuing violation doctrine as grounds to toll the limitations period. *Id*. at 917.

[7] Subsequent to the Tenth Circuit's denial of a certificate of appealability, the *Griffith* petitioner filed another § 2241 petition and again challenged application of the 85 percent law to his state sentence. His petition was dismissed as untimely. *See Griffith v. Whitten*, No. CIV-19-00449-PRW, 2020 WL 6748669 at *3 (W.D. Okla. Nov. 17, 2020). In that case, as here, the petitioner was charged with conduct occurring both before and after March 1, 2001, the date on which a crime must have been committed for the 85 percent law to apply. *See id*. at 1 (noting that the petitioner's crimes were alleged to have occurred in December 1998 through December 2001).

7

to the 85 percent law. *See Griffith*, 625 F. App'x at 917 (rejecting Oklahoma prisoner's challenge to application of the 85 percent law to his sentences on grounds the trial court record did not show when his eight child sex abuse offenses occurred finding "[w]hether that law should be applied under these circumstances is a question of state law" and further that "there is generally no federal constitutional right to parole" (citing *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (additional citations omitted)); *cf. Ivey v. Tugggle*, No. 25-7049, 2025 WL 2798566 (10th Cir. Sept. 30, 2025) ("[W]e can find no authority for the proposition that it offends federal law for ODOC to reclassify a person's crime of conviction for purely administrative purposes . . . [n]or can we find any authority to relieve Ivey from the application of the 85% rule, even if its application was erroneous as a matter of state law."). Accordingly, Petitioner has failed to establish that he has any liberty interest in those credits or that the removal of the credits was in violation of his constitutional due process rights.

To the extent Petitioner bases his claims on the fact that he had discharged his sentence on Count 1 prior to the ODOC applying the 85 percent law and rebilling that sentence, he similarly has not established a basis for relief under § 2241. *See* Pet. at 4, Ground Two. As the Tenth Circuit has found, if such conduct "gave rise to a liberty interest requiring some form of procedural due process, such as notice of the rebill and an opportunity to contest it . . . [a] hearing to determine whether [Petitioner's] . . . sentence was correctly discharged could result in only one answer: that it was discharged erroneously." *Harmon v. Booher*, 271 F. App'x 704, 708 (10th Cir. 2008). "Under these

8

circumstances, granting [Petitioner] procedural due process would be to grant him nothing." *Id.* (cleaned up, citation omitted).

## V.   Conclusion

Accordingly, for the reasons set forth, the Court finds Petitioner's § 2241 claims are untimely.  The Court further finds the claims lack merit.

IT IS THEREFORE ORDERED that the Report and Recommendation [Doc. No. 21] is ADOPTED to the extent it is consistent with the findings set forth in this Order.

IT IS FURTHER ORDERED that Respondent's Motion to Dismiss [Doc. No. 9] is GRANTED and the Petition [Doc. No. 1] is DISMISSED WITH PREJUDICE as untimely. Alternatively, the Petition is DENIED on the merits. A separate judgment shall be entered contemporaneously with this Order.  Petitioner's Motion for the Appointment of Counsel [Doc. No. 20] is DENIED as MOOT.

IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a petitioner.[8] A COA may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see Slack v. McDaniel*, 529 U.S.

---

[8] A state prisoner seeking to appeal the denial of a habeas petition filed pursuant to 28 U.S.C. § 2241 must obtain a COA.  *See Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000).

473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Upon consideration, the Court finds the requisite standard is not met in this case. Therefore, a COA is DENIED. The denial shall be included in the judgment.

    IT IS SO ORDERED this 21st day of January, 2026.

                                    SCOTT L. PALK
                                    UNITED STATES DISTRICT JUDGE